UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| SERVISFIRST BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-CV-00002-JAR |
| | ) | |
| DENNIS J. YOUNG, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion for Partial Summary Judgment. (Doc. 46). The motion is fully briefed and ready for disposition. For the following reasons, the motion will be granted in part.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Beginning May 31, 2013, Plaintiff ServisFirst Bank ("ServisFirst") made loans totaling approximately seven million dollars to Harding Enterprises, LLC ("Enterprises"), a Mississippi company owned by Greggory Harding and specializing in dirt moving and excavation. These loans were secured by a perfected security interest in virtually all of Enterprises' assets, including equipment. (Doc. 54 at 4-5). Enterprises has since defaulted on the loans, and ServisFirst has accordingly obtained judgment against both Harding and Enterprises in the amount of $5,884,577.48. *ServisFirst Bank v. Harding Enterprises, LLC et al.*, No. 2:17-cv-00605 (N.D. Ala.

1

2017). Harding and Enterprises, meanwhile, have each filed for bankruptcy in the United States District Court for the Eastern District of Missouri.[1]

Neither Enterprises nor Harding, however, is a party to this case. Instead, ServisFirst brings this action against Defendants Dennis J. Young and affiliated companies (collectively, the "Young Entities")[2] claiming conversion, replevin, and violation of the Missouri Uniform Fraudulent Transfer Act ("MUFTA"). The Young Entities had a business relationship with Harding since 2006 and had frequently employed him as a subcontractor on construction projects across the country. This dispute concerns 40 pieces of equipment sold by Enterprises to the Young Entities from February 22, 2012 through October 21, 2015. 31 of the pieces were sold in 2012 (the "2012 Transfers"), while nine were sold after ServisFirst had perfected its security interest in Enterprises' assets (the "Post-Perfection Transfers").[3]

ServisFirst contends that both the 2012 Transfers and Post-Perfection Transfers were fraudulent conveyances by Enterprises, while the Post-Perfection Transfers were in direct violation of ServisFirst's perfected security interest in the equipment. The Young Entities seek summary judgment as to the 2012 Transfers only, acknowledging material issues of fact as to the Post-Perfection Transfers.

## II.   JURISDICTION AND CHOICE OF LAW

This Court has diversity jurisdiction under 28 U.S.C. § 1332, as the parties are diverse and the amount in controversy is over $75,000. "In a diversity action, a district court sitting in Missouri follows Missouri's choice-of-law rules to determine applicable state law." *Stricker v. Planters*

---

[1] Harding's Bankruptcy Petition is Case No. 18-10129; Enterprises' Bankruptcy Petition is Case No. 18-10219.
[2] The parties have agreed that Defendant Young's General Contractors LLC, owned by Dennis Young, Jr., should be voluntarily dismissed from this case. The Court will order dismissal accordingly.
[3] The Court is referencing the spreadsheet of equipment produced by ServisFirst in response to Defendants' interrogatories. (Doc. 48-9, Exhibits A and B).

2

*Bank*, 436 F.3d 875, 877 (8th Cir. 2006). In tort actions, Missouri courts apply the "most significant relationship" test. *Id.* Missouri has the most significant relationship to the fraudulent transfer claims asserted, as the transfers all occurred in Missouri. Both parties have applied Missouri law in their respective briefs. Therefore, this Court will apply Missouri law to the fraudulent transfer claims in this motion for partial summary judgment.

### III. LEGAL STANDARD

Under Fed. R. Civ. P. 56, a movant is entitled to summary judgment if they can "show that there is no genuine dispute as to any material fact" and they are "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, the evidence must be viewed in the light most favorable to the nonmoving party. *Osborn v. E.F. Hutton & Co., Inc.*, 853 F.2d 616, 619 (8th Cir. 1988). The burden of proof is on the moving party and a court should not grant a summary judgment motion unless it is convinced that there is no evidence to sustain a recovery under any circumstances. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). The nonmovant, however, "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*, 475 U.S. 574, 587-87 (1986)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### IV. DISCUSSION

#### A. *Conversion and Replevin as to the 2012 Transfers*

There is confusion among the parties whether ServisBank has brought a claim for conversion and replevin as to the 2012 Transfers. The Young Entities have moved for summary

3

judgment on these claims "to clear up any ambiguity." (Doc. 47 at 9, n.3). This Court, however, cannot grant summary judgment on a claim not properly before it. After identifying the count of conversion, ServisFirst's First Amended Complaint states:

> 47. ServisFirst claims a first priority, perfected security interest in the non-titled equipment owned or later acquired by Enterprises on or after May 31, 2013.
>
> 48. The post-May 31, 2013 sale, transfer or other disposition of the non-titled equipment to the Young Defendants was a default by Enterprises under the security agreement and provided to ServisFirst the immediate right to possess the non-titled equipment of Enterprises. (Doc. 29).

After identifying the count of replevin, ServisFirst's First Amended Complaint similarly states:

> 61. ServisFirst is entitled to immediate possession of the non-titled equipment in the possession of the Young Defendants that they obtained from Enterprises after May 31, 2013. (*Id.*).

The plain language of ServisFirst's First Amended Complaint does not include a claim for conversion or replevin against the Young Entities as to the 2012 Transfers.[4] Accordingly, this Court cannot grant summary judgment as to the 2012 Transfers since they are not properly before the Court. At this stage of litigation, this Court would look unfavorably upon any attempt by ServisFirst to bring any claim for conversion or replevin as to the 2012 Transfers.

### B. *Fraudulent Transfer as to the 2012 Transfers*

ServisFirst claims that the 2012 Transfers violated § 428.024.1 of MUFTA, which states that a "transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay, or defraud

---

[4] The Court's understanding of ServisFirst's First Amendment Complaint is supported by ServisFirst's response to Defendants' summary judgment motion. When responding to Defendants' statute of limitations claims as to the conversion and replevin counts, ServisFirst neglected to mention the 2012 Transfers and instead discussed only bills of sale from August 30, 2013 and beyond (*i.e.*, the Post-Perfection Transfers). (Doc. 54 at 23).

4

any creditor of the debtor." Mo. Rev. Stat. § 428.024.1. The statute provides 11 factors to consider, often referred to as "badges of fraud," when assessing whether fraudulent intent existed at the time of transfer.[5] Whether a transfer was made with fraudulent intent is a question of fact. *See Curtis v. James*, 459 S.W.3d 471, 475 (Mo. Ct. App. 2015). However, "[i]ntent to defraud must be shown by clear and convincing evidence." *Birkenmeier v. Keller Biomedical, LLC*, 312 S.W.3d 380, 389 (Mo. Ct. App. 2010). "Fraud is never presumed when the transaction may fairly be reconciled with honesty." *Higgins v. Ferrari*, 474 S.W.3d 630, 636 (Mo. Ct. App. 2015) (quoting *Bueneman v. Zykan*, 52 S.W.3d 49, 54 (Mo. Ct. App. 2001)).

Dennis Young met Greggory Harding in 2006, when Harding approached Young seeking to serve as a subcontractor on clean-up work related to Hurricane Katrina. (Doc. 49-1 at 14). Over the next five years, the Young Entities subcontracted increasingly large projects to Harding. In 2011 and 2012, Young Entities were the general contractor on construction jobs in Vidalia, Mississippi, and Bird's Point New Madrid, Missouri, but Harding performed the entirety of both jobs as subcontractor. (*Id.* at 40-69). Both jobs required that Young Entities loan Harding money in order to bond the contracts as required by the Army Corps of Engineers, the client. (*Id.*). These loans were secured by Harding's equipment. When the loans could not be repaid in full, bills of sale were executed transferring equipment to the Young Entities, with the proceeds of the sale being applied directly to the loans. On February 22, 2012, a bill of sale in the sum of $67,500, "[p]roceeds to be applied to promissory note," was executed. (Doc. 48-10). Similarly, on June 1,

---

[5] The badges of fraud are: (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property after the transfer; (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor. Mo. Rev. Stat. § 428.024.2.

5

2012, Gregg Harding sold Young Entities equipment valued at $90,000, with proceeds from the sale "to be applied in full to the invoice from Young's General Contracting, Inc. for the cost of the bonds related to the [Bird's Point New Madrid] MATOC project." (*Id.*). These two bills of sale comprise the 2012 Transfers at stake here.

The key question on this motion for partial summary judgment is whether a reasonable fact finder could conclude that Harding made the 2012 Transfers with fraudulent intent. "Fraudulent transfer law focuses on the intent of the debtor. If the debtor transfers its assets with the intent to defraud its creditors, the transfer can be avoided as fraudulent."[6] *Ritchie Capital Management, LLC v. Stoebner*, 779 F.3d 857, 862 (8th Cir. 2015). The Young Entities primarily claim a timing issue, since the 2012 Transfers were made before Harding and Enterprises had even been in contact with ServisFirst. Therefore, the Young Entities argue, Harding and Enterprises could not have intended to defraud an unknown future creditor at the time of the 2012 Transfers. While this argument has some logical appeal, MUFTA applies "whether the creditor's claim arose before or after the transfer was made." Mo. Rev. Stat. § 428.024.1. The plain language of the statute explicitly recognizes the possibility that a debtor may fraudulently transfer assets in advance of incurring a substantial debt.[7]

This Court must, therefore, examine the badges of fraud to determine whether a reasonable fact finder could conclude that the 2012 Transfers were fraudulent. "For a transfer to be found fraudulent, several indicia of fraud must be shown. More than one badge of fraud must be present." *Birkenmeier*, 312 S.W.3d at 389 (citing *Taylor v. Clark*, 140 S.W.3d 242, 251 (Mo. Ct. App. 2004)). ServisFirst contends that five badges of fraud are potentially present.

---

[6] MUFTA also provides an affirmative defense against § 428.024.1 claims for transferees who "took in good faith and for a reasonably equivalent value." Mo. Rev. Stat. § 428.044. Defendants have not raised this defense, however.
[7] The Court notes that much of the precedent involving attempts to defraud future creditors involve long-term, repeat frauds, such as ponzi schemes. *See, e.g.*, *Kelley v. Kanios*, 383 F. Supp. 3d 852 (D. Minn. 2019).

6

Insider: ServisFirst claims that Dennis Young was an insider of Enterprises under the MUFTA definition of an insider as "a person in control of the debtor." Mo. Rev. Stat. § 428.009(7)(b)(c). ServisFirst's argument rests on the notion that Young was an insider because Harding was his subcontractor and Young therefore had some control over Harding's cash flow. ServisFirst cites no precedent for the proposition that a general contractor is an insider of their subcontractor, and the claim does not stand to reason. Fraudulent transfers to insiders typically involve transfers to relatives, directors and officers, or related entities. *See, e.g., Ritchie*, 779 F.3d 857 (transfer for the benefit of company's owner); *In re Sherman*, 67 F.3d 1348 (8th Cir. 1995) (transfer of property to parents of debtor); *Jackson v. Star Sprinkler Corp. of Florida*, 575 F.2d 1223 (8th Cir. 1978) (transfer to a corporation created by debtors' insiders). During his deposition, Dennis Young explicitly stated the following as to Harding: "I never got in his business. I never told him how to run it. I never made a decision for him." (Doc. 49-1 at 70). This Court concludes that a reasonable fact finder could not find Dennis Young to have been an insider of Harding or Enterprises at the time of the 2012 Transfers, and there is no material fact in dispute as to Young's alleged status as an insider of Enterprises.

Possession and Concealment: ServisFirst next claims that Harding and Enterprises retained possession of much of the equipment sold in the 2012 Transfers and subsequently concealed the transfers from ServisFirst's appraiser. The Young Entities argue, and ServisFirst does not explicitly deny, that it is entirely standard within the construction industry to purchase equipment without immediately changing its location, especially when the equipment continues to be used by a subcontractor as here.[8] The following exchange from Dennis Young's deposition, referring to

---

[8] There is some dispute as to whether the Young Entities did in fact take possession of certain equipment, including a John Deere HX15 bushhog mower. (Doc. 54 at 29-30). This dispute is not material to the ultimate question of fraudulent intent, and the Court's decision presumes that Young Entities in fact retained possession of the equipment.

7

the February 22, 2012 transfers, clearly explains why the Young Entities would not have taken immediate possession:

> Question: Okay. And did Mr. Harding deliver that property to you?
>
> Answer: No.
>
> Question: Why not?
>
> Answer: It wasn't normal -- we just didn't always deliver it. He had a bone yard. I call it a bone yard. Sometimes we did and sometimes we didn't. I mean, I've got a lot of this equipment sitting on my -- still, I have it. Most of it is junk.
>
> ...
>
> Question: And there would be no reason for any of these pieces of equipment to be on Mr. Harding's shop or yard after February of 2012?
>
> Answer: That's not necessarily true.
>
> Question: Okay. Well, tell me the circumstances why that's not true.
>
> Answer: Well, because a lot of times, you just left the equipment setting there until I needed it or I sold it. I wasn't moving equipment day and night from one place to another.
>
> Question: So some of it was on his yard?
>
> Answer: Some of it was on his yard. A lot of it was on my yard. It just depends.
>
> Question: Why did you do it that way?
>
> Answer: That's just common practice. There's guys in my town right now that they got equipment on my property right now that's theirs. They might have had a job close to me and they parked their stuff there. They come and get it. It may set there on my place out there a year.

(Doc. 49-1, at 48-55).

Harding retaining possession of the equipment is not indicative of fraud when retention is standard practice in the industry. *See In re Wright*, 611 B.R. 319, 326 (Bankr. W.D. Mo. 2019)

8

(finding that certain badges of fraud, while technically present, had "logical explanations"). The badges of fraud of possession and concealment "as they are meant to be applied under the statute are not present in this case." *In re Brown*, 265 B.R. 167, 174 (Bankr. E.D. Ark. 2001). When large construction equipment is sold and it is industry standard not to immediately take possession after a sale, a transferor's continued possession is not indicative of fraud.

Reasonably Equivalent Value: ServisFirst argues that the Young Entities only paid Harding and Enterprises $154,499 for $379,200 worth of construction equipment and a truck. The Court agrees that this badge of fraud is potentially present and a material issue of fact exists as to whether the Young Entities paid reasonably equivalent value for the 2012 Transfers. The Court notes that Enterprises did receive some meaningful value for the 2012 Transfers, unlike other cases in which courts have found fraudulent transfer because no value was exchanged. *See, e.g., Ritchie Capital Management, LLC v. Stoebner*, 779 F.3d 857 (8th Cir. 2015).

Transfer Shortly Before Incurring Substantial Debt: ServisFirst argues that the June 1, 2012 transfer was less than twelve months before Enterprises incurred a substantial debt. ServisFirst does not claim that this badge applies to the February 22, 2012 transfer, which includes 27 of the 40 total pieces of equipment at stake in this litigation. As to the June 1, 2012 transfer, this Court finds that this badge of fraud is of limited importance where, as here, ServisFirst approached Harding and Enterprises to make the loan. If not for ServisFirst seeking out Harding, there is no evidence in the record demonstrating Harding had any intent to incur debt. Based on these facts, a reasonable factfinder could not determine that Harding and Enterprises incurring unsolicited debt nearly a year after the June 1, 2012 transfer is indicative of fraud.

Timing of 2012 Transfers: The badges of fraud are not exhaustive under MUFTA. Mo. Rev. Stat. § 428.024.2 (stating consideration may be given to badges of fraud "among other

factors"). The badges of fraud are an assistive device provided by the legislature because fraud is often difficult to prove by direct evidence, and the Court may consider other relevant factors accordingly. *See Higgins v. Ferrari*, 474 S.W.3d 630, 638 (Mo. Ct. App. 2015) ("The 'badges of fraud' inquiry is only a tool that the trial court may use to try to reach the underlying relevant inquiry – fraudulent intent."). As this Court has repeatedly stated, ServisFirst must demonstrate a genuine issue of material fact as to Harding's intent to defraud creditors at the time of the 2012 Transfers. ServisFirst has not submitted any evidence indicating that Harding had any intent to incur debt generally, let alone from ServisFirst specifically, at the time of the 2012 Transfers. A reasonable factfinder could not conclude that Harding fraudulently transferred assets to his general contractor at below market value with intent to deceive an unknown lender one year later.

ServisFirst has identified only one badge of fraud, the lack of reasonably equivalent value for the transfers, which may indicate fraudulent intent by Harding and Enterprises at the time of the 2012 Transfers. A reasonable factfinder could not conclude that Dennis Young was an insider of Harding or that Enterprises' possession, supposed concealment, or incurrence of debt were indicative of fraud. The timing of the 2012 Transfers in relation to Enterprises' incurrence of debt substantially diminishes the likelihood of fraudulent intent. ServisFirst has failed to identify any material factual dispute on these badges of fraud. Missouri precedent clearly provides that "the presence of one badge alone does not support a finding of actual intent to defraud." *In re Seitz*, 400 B.R. 707, 714 (Bankr. E.D. Mo. 2008). Accordingly, a reasonable factfinder could not conclude that Harding or Enterprises had actual intent to defraud future creditors at the time of the 2012 Transfers.

## V.     CONCLUSION

It is apparent from the record, and the Young Entities do not deny, that Harding and Enterprises deceived ServisFirst in 2013 and beyond by representing ownership of previously transferred equipment in order to obtain sizeable loans. The Young Entities themselves are a victim of Harding's insolvency and a creditor in the associated bankruptcy petition. (Doc. 48 at 5). This case, however, does not concern Harding or Enterprises' intent in relation to obtaining loans from ServisFirst. Instead, to defeat this motion for partial summary judgment, ServisFirst was required to show a genuine issue of material fact as to whether Harding and Enterprises had intent to defraud at the time of the 2012 Transfers. Because ServisFirst has failed to do so, the Young Entities are entitled to judgment as a matter of law on these claims. The Court concludes that the Young Entities are entitled to summary judgment on ServisFirst's MUFTA claims as to the 2012 Transfers.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Partial Summary Judgment (Doc. 46) is **GRANTED in part**. Judgment is entered in favor of Defendants on Count III of Plaintiff's First Amended Complaint (Doc. 29) as to the 2012 Transfers only.

**IT IS FURTHER ORDERED** that Defendant Young's General Contractors, LLC is hereby **DISMISSED without prejudice**.

Dated this 24th day of December, 2020.

*/s/ John A. Ross*
_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE
